Anonymous.

<hr/>

## ANONYMOUS.

1. EVIDENCE : BASTARDY : EXAMINATION OF PROSECUTOR AS TO HER CHASTITY.— In a case of bastardy, if the mother be introduced to prove the paternity of the child, she may be asked on cross-examination, if she did not have sexual intercourse with other men about the period of conception, in order to show that it cannot be known who the father is; but she cannot, for the purpose of attacking her credibility, be interrogated in relation to her want of chastity at other times. See 1 Greenl. Ev. § 458, note 1; Swift's Ev. p. 81; *McBride* v. *McBride*, 4 Esp. p. 242; *Bole* v. *Hill*, 1 C. & P. 100; *Rex* v. *Teal*, 11 East, 307.

2. SAME : OPINIONS OF EXPERTS.—It is incompetent to show, by the testimony of professional persons, in impeachment of the mother's testimony, in a prosecution for bastardy, that it is highly improbable that impregnation can be produced by the first act of coition.

ERROR to the Circuit Court of Leake county. Hon. E. G. Henry, judge.

On the 21st of June, 1858, the defendant in error (plaintiff below) appeared before a justice of the peace of Leake county, and made oath that she was delivered of a bastard child on the 11th of April of that year, and that plaintiff in error was the father of said child. A warrant was thereupon issued by the justice of the peace, and the alleged father arrested, and such proceedings were thereupon

had before the justice, in pursuance of Ch. 24, p. 216, of the Rev. Code, that the defendant below was required to execute bond in the penalty of $500, to appear at the next term of the Circuit Court of said county, to answer said charge.

An issue was made upon the count to try the question whether the alleged or reputed father was the real father or not. On the trial of this issue, the plaintiff below testified, that on the 11th of April, 1858, she being an unmarried woman, was delivered of a child, which said child was begotten on her body by the defendant on the night of the 10th or 11th of July, 1857; that on the last-mentioned night she was at the house of defendant's mother; that there was only one room in the said house, in which there were three beds; that she occupied one of these beds, defendant's sister another, and the defendant a third; that defendant came to her bed, without any previous arrangement to that effect, and "importuned her to submit to his embraces, promising to marry her if she would submit; to which, after some minutes, she yielded, and defendant had intercourse with her one time, and impregnated her with the child of which she had since been delivered."

Cross-examined: Defendant's counsel then asked plaintiff, "if she had ever, before that time, had sexual intercourse with any person," to which question plaintiff's counsel objected. The defendant's counsel then proposed to offer proof in connection therewith, if said question should be answered in the negative, " of the improbability of the truth of the statement that the plaintiff was impregnated by one and the first act of sexual connection." The court sustained plaintiff's objection, and the defendant excepted.

Plaintiff, being further cross-examined, stated that she had known the defendant for twelve or thirteen years, and that he had never before the night referred to proposed to her to have sexual intercourse with her, though she was several times with him, and had stayed two or three weeks at his mother's house. That in the course of a week or two after said 11th of July, 1857, the defendant told her he could not marry her then.

She further stated, that about a week after the 11th of July, 1857, she was at a Mr. D.'s, and there saw a young man named G. A., who lived at D.'s. She was in the room with said G. A., and sat on the bed with him, but she did not have any sexual

connection with him, and did not indulge in any indecent familiarities with him. Said G. A. courted her at that time, and she agreed to marry him.

Here plaintiff rested her case.

The defendant was then sworn, and he stated that he had never had any sexual intercourse with plaintiff, and was never engaged to be married to her; that plaintiff was not at his mother's· house on the 10th or 11th of July, 1857, but was there on the 4th, and there again on the 17th or 18th of that month, and was not there in the interval between the 4th and 17th. That she spent most of the night of said 17th or 18th of July at a party in the neighborhood, and next morning went to Mr. D.'s. Plaintiff was frequently at his mother's in the fall of 1857, but he never proposed to have sexual intercourse with her, and never supposed she was accessible in that way, and that he never knew plaintiff accused him with being the father of the child until a few days before he was arrested.

Mr. D. was next sworn as a witness, and he testified that on Saturday, the 18th or 19th of July, 1857, being the day after the party spoken of by defendant, the plaintiff came to his house and stayed until Monday; that on Sunday night plaintiff and said G. A. stayed together in his (G. A.'s) room, and witness saw them sitting on the bed together; that on Sunday evening neither plaintiff nor G. A. came to supper, although they were invited, but they remained together in G. A.'s room all night, notwitstanding witness's wife informed plaintiff that a bed had been prepared for her.

J. L. testified, that he resided at defendant's mother's in 1857, and that he remembers· distinctly that plaintiff was there on the 4th, and then again on the 17th or 18th of July of that year, and was not there between those dates; but he is unable to state any ·other date at which the plaintiff was there.

Here defendant closed.

Plaintiff then introduced a Mrs. L., who was cousin to plaintiff and sister-in-law to defendant, and she stated, that about the 21st of December, 1857, she was residing with defendant, and talking about plaintiff's being pregnant, when defendant said, " he was not surprised to hear it; that he did not care; it would not hurt him, as he expected to marry her in a few days." She further stated

that defendant was married to a different woman on the 24th of December, 1857.

Plaintiff closed her evidence.

The defendant was again introduced, and stated that on the 22d December, 1857, " he was jestingly talking with the last witness, and when told that plaintiff was pregnant, he said he was not surprised at that; but he did not say he was going to marry her, because he then had obtained his marriage license, and on the 24th December, 1857 (two days afterwards), he was married under that license to his present wife."

This was all the evidence.

The jury found the issue for the plaintiff, and assessed her damages at $300, to be paid in twelve annual instalments of $25 each, and judgment was rendered accordingly.

The defendant moved for a new trial, which was overruled, and he excepted and sued out this writ of error.

The instructions of the court are not set out, because they do not involve any principle of any importance, nor were they litigated in this court.

*J. A. P. Campbell*, for plaintiff in error.

*Lawson* and *Luckett*, contra.

HARRIS, J., delivered the opinion of the court.

This is a proceeding under the act for the maintenance of bastard children. A jury and verdict for defendant in error in the Circuit Court, and writ of error to this court, appear in the record.

In the progress of the trial, plaintiff in error, by his counsel, on cross-examination of defendant in error, asked her, " if she had ever before had sexual connection with any person." (See Record, p. 6.) To this objection was made by counsel for defendant in error; when counsel for plaintiff in error proposed, in connection with this testimony, if answered in the negative, to offer proof of the improbability of the statement, that defendant in error was impregnated by one and the first act of sexual intercourse. The objection was sustained by the court, and exceptions filed to this ruling, which is the first error complained of here.

Generally, in trials for seduction, *per quod servitium amisit*, and on indictments for rape, questions of this character are inadmissible. The object of indulging parties in this latitude of inquiry, on cross-examination, is to inform the jury of the character of the witness whom they are asked to believe. Inquiries having no tendency to this end are clearly inadmissible. 1. Greenleaf Ev. 8th edit. § 458, cases cited. The interests of justice do not require it, nor is the good of society promoted, by permitting the errors of a woman's whole life (perhaps sorely repented of by her, though never forgiven by the community) to be dragged from her own lips, and perpetuated in judicial history, for the mere gratification of her seducer. It is a sufficient stigma upon the age, that while it consigns to unatonable infamy the inexperienced victim who has yielded herself to his gratification, *he* bears no part, in public estimation, or at least a very inconsiderable one, in the degradation, ruin, and life-long wretchedness he has produced. The State has a deep interest in the equality of punishments, as well as the inducements to reformation, in cases of this character; and the disparity of suffering, and inequality in social position, already existing, should neither be augmented nor countenanced by tribunals established to administer *justice*.

But in cases of bastardy, when the paternity of the child is the fact in issue, and the mother is introduced to establish that fact, while it is not competent to investigate her conduct or character, for her whole life, for chastity, this inquiry, if restricted to the proper time, is material and pertinent, and she will be held to answer. 1 Greenleaf's Ev. § 458, note 1, on p. 597 (8th edition); Swift's Ev. 81; *McBride* v. *McBride*, 4 Esp. 242; *Bole* v. *Hill*, 1 C. & P. 100; *Rex* v. *Teal et al.* 11 East, 307, 311.

If the question in this case had been confined to the period of conception, the inquiry would have been material, as tending to show that the real father could not be known. To ask " if she had ever before had sexual connection with any person," could in no manner necessarily show the innocence of plaintiff in error, or cast suspicion upon the testimony of defendant in error, if answered in the affirmative. And if answered *in the negative*, and the testimony had been adduced as proposed, to show that it was highly improbable that impregnation could be produced by the first act of

coition,—such testimony would have been wholly inadmissible, as too uncertain, indefinite, and hypothetical, to form the basis of judicial action or investigation. The courts, in our opinion, have gone quite far enough in subjecting the life, liberty, and property of the citizen to the mere speculative *opinions* of men claiming to be *experts* in matters of science, whose confidence, in many cases, bears a direct similitude and ratio to their ignorance.

We are not disposed to extend this doctrine into the field of hypothetical conjecture and probability, and to give certainty as *evidence*, to that which, in its very nature, must be wholly uncertain and unsatisfactory; dependent on circumstances and conditions entirely secret, hidden, and unknown, as facts. And without a knowledge of which, neither science nor experience, however great, could afford us the remotest information. We think, therefore, the question and evidence proposed were properly excluded from the jury.

The second ground of error assigned proceeds on the assumption that this proceeding is to be regulated, at least to some extent, by the Act of 1822, Hutch. Code, p. 580. This is a mistake, we think. The proceeding is under the provisions of the new Code, chap. 24, p. 216, and is in strict conformity therewith. There was no error in the instruction complained of.

The last ground of error relied on is, that the verdict is against the decided preponderance of evidence. We do not agree with counsel in this view, but think the jury may have been warranted in so finding. It was a case involving the credibility of the witnesses; and circumstances are not wanting tending to sustain the view taken by the jury.

Judgment affirmed.