CLITUS PAUL

*v.*

HENRIETTA PAUL.

In a suit for divorce, evidence of defendant's adultery, committed in a brothel, is not to be rejected because given by witnesses who are keepers of or employed in such resorts, if their testimony appears credible otherwise.

Bill for divorce from the bond of marriage. On final hearing on pleadings and proofs.

*Mr. F. H. Pilch,* for complainant.

*Mr. W. B. Guild, Jr.,* for defendant.

THE CHANCELLOR.

This is a suit by a husband against his wife for divorce, *a vinculo,* for the cause of adultery. The parties were married in this state in 1868. They then and up to and at the time of the commencement of this suit were inhabitants of this state. The offence is alleged in the bill to have been committed with William Leach, in the city of Newark, in this state, on different days in September and October, 1881, and at divers other times. Up to July in that year, the parties lived together as husband and wife for about seven years, in a house in Mechanic street in that city. In the last-mentioned month the complainant left the defendant and ceased to live with her, but she continued to live there until April, 1882. The bill was filed November 2d, 1881.

Paul *v.* Paul.

Leach boarded in the house with the parties while they lived together, and with the defendant afterwards, at various times, altogether for about four years. He boarded there until May, 1881. When he left he went to the house of Mrs. Julia Forman, wife of William Spencer Forman, in Commerce street, in Newark, where he lived, tending the bar in Mrs. Forman's saloon there. He remained there for about four months, he says, until Mr. Forman's death.

The evidence shows, very clearly, criminal intimacy between the defendant and Leach in the summer and fall of 1881. Margaret O'Neil, who lived in the house opposite that which was then occupied by the defendant, swears that the last of August or the first of September in that year, she saw Leach (who, it should be remarked, was a married man, but did not live with his family), put the defendant to bed in the latter's own house. She says that the defendant was at the time so drunk she could not walk. Richard O'Neil, son of Margaret, who lived with his mother, testifies that he saw Leach and the defendant in bed together in the defendant's house, in September, 1881. He testifies also to other conduct on the part of Leach and the defendant there indicative of criminal intimacy between them. The

NOTE.—Except in cases involving character, such as rape, *crim. con.*, breach of promise &c., proof that a witness was a common prostitute, offered to impeach her testimony, is incompetent, *1 Whart. Evid.* § *562 ;* also, *La Beau* v. *People, 33 How. Pr. 66 ; 34 N. Y. 223 ; MacBride* v. *MacBride, 4 Esp. 242 ; Southard* v. *Rexford, 6 Cow. 254 ; Ketchingham* v. *State, 6 Wis. 426 ; State* v. *Larkin, 11 Nev. 314 ; State* v. *Shields, 45 Conn. 256 ; State* v. *Corkle, 16 W. Va. 742, 761 ; Sidelinger* v. *Bucklin, 64 Me. 371 ; Smitherick* v. *Evans, 24 Ga. 461 ;* see *Com.* v. *Murphy, 14 Mass. 387 ; Indianapolis R. R.* v. *Anthony, 43 Ind. 183 ; People* v. *Blakely, 4 Parker Cr. Rep. 176 ; Bowers* v. *State, 29 Ohio St. 542 ; Thomas* v. *David, 7 C. & P. 350 ; Rudsdill* v. *Slingerland, 18 Minn. 380 ; Holland* v. *Barnes, 53 Ala. 87 ; Evans* v. *Smith, 5 Mon. 363 ; Anonymous, 1 Hill (S. C.) 251 ; Van Houten* v. *Van Houten (MS ), 1 Stew. Dig. 522* § *813 ; 2 Taylor's Evid.* § *1436 ; Reg.* v. *Holmes, L. R. (1 C. C.) 334 ; State* v. *Morse, 67 Me. 428 ; Wood* v. *State, 48 Ga. 192, 292 ; State* v. *Shields, 13 Mo. 236 ; Day* v. *State, Id. 422 ; State* v. *Jones, 71 Mo. 590 ; Johnson* v. *State, 61 Ga. 305 ; Boles* v. *State, 46 Ala. 204 ; Ford* v. *Jones, 62 Barb. 484 ; Wright* v. *Paige, 36 Barb. 438.* Also, proof that the witness has had a bastard child, *Weathers* v. *Barksdale, 30 Ga. 888 ; Morse* v. *Pineo, 4 Vt. 281 ; Com.* v. *Moore, 3 Pick. 194 ; Tillson* v. *Bowley, 8 Me. 163 ; Merriman* v. *State, 3 Lea 393 ;* see

Paul *v.* Paul.

defendant admits that she called on Leach, at Forman's, at various times while he was living there, but alleges (and so does he) that her object in doing so was merely to endeavor to collect from him money which he owed her for board and room rent. It seems very clear, however, from the testimony, that some of the visits were for the purpose of illicit intercourse, and that such intercourse then took place between them. It is unnecessary to speak more particularly of these occurrences. If the witnesses are to be believed, the proof is overwhelming. It is objected, however, on the part of the defendant, that the witnesses are, according to their own admissions, infamous, and therefore are unworthy of belief. It is true they admit that when the transactions of which they testify took place they were either keepers of houses of ill-repute or otherwise engaged in business in such disreputable places. But while the testimony of such witnesses is to be closely scrutinized, credit is not to be withheld if the testimony otherwise appears to be worthy of confidence. It is quite obvious that the infamous transactions of the visitors to brothels or places of similar character, can rarely be proved by any others than those who are engaged in the business of such resorts, or those who are visitors there. And the testi-

*Anonymous, 37 Miss. 54; or been guilty of adultery, Dimick v. Downs, 82 Ill. 570; Washburn v. Washburn, 5 N. H. 195; People v. Knapp, 42 Mich. 267. See Frazer v. People, 54 Barb. 306.*

A divorce was refused on the testimony of an ignorant prostitute, *Banta v. Banta, 3 Edw. Ch. 295; State v. Cook, 3 W. G. L. (Ohio) 407.* So, on the uncorroborated testimony of two prostitutes, *Turner v. Turner, 4 Edw. Ch. 566;* or their accomplices, *Adams v. Adams, 2 C. E. Gr. 337; Hume v. Scott, 3 A. K. Marsh. 261;* see *State v. Parker, 7 La. Ann. 86; Cunningham v. State, 65 Ind. 377; Pence v. Dozier, 7 Bush 133.* The evidence of one employed to watch and detect a person charged with adultery is competent, but of little weight, *Anonymous, 17 Abb. Pr. 48; Ciocci v. Ciocci, 26 E. L. & Eq. 604; Berry v. People, 19 Alb. L. J. 336; 77 N. Y. 688; Blake v. Blake, 70 Ill. 618; Com. v. Downing, 4 Gray 29; Com. v. Graves, 97 Mass. 114; Wright v. State, 7 Tex. App. 574; St. Charles v. O'Malley, 18 Ill. 407;* see *Bennett v. Waller, 23 Ill. 97;* and so of a pimp, *Adams v. Adams, 2 C. E. Gr. 334; Whitenack v. Whitenack, 9 Stew. Eq. 474;* or the keeper of a house of ill-fame, the landlord who rents it for that purpose and the person who furnishes it, *Hewitt v. Morris, 12 Jones & Spen. 557.* As to a gambler, see *Long v. State, 22 Ga. 40; English v. State, 35 Ala. 428.* See, also, *Va. Law Journal, July, 1880.*—Rep.

mony of persons of the latter class is, to a certain degree at least, liable to like criticism and objection, for a similar reason, with that of those of the former class. Those who visit such places for the purposes for which they are maintained, cannot reasonably expect to overthrow the evidence against them as to their transactions there, given by those who are employed or with whom they consort in such resorts, by the mere fact that the employment or errand of the witness in such places is disreputable. That the defendant, on several occasions, visited the disreputable house where Leach was engaged as a bar-tender she admits. She admits, also, that she drank beer there, one or two glasses at one time, and that she was introduced by him to the keeper of the house. The last-named person and her housekeeper both swear to conduct on the part of her and Leach, on some of her visits, which unmistakably shows that she had criminal intercourse with him then, and they swear, also, that she passed there habitually by an assumed name. The complainant is entitled to a decree of divorce.