## Van Epps *vs.* Van Epps.

What is sufficient evidence of adultery, in a suit for a divorce.

In Equity.   The bill in this cause was filed by the wife against her husband, to obtain a divorce, on the ground of adultery.   The defendant denied the material allegations in the bill. An issue was thereupon awarded, and was tried at the Albany circuit.   The trial resulted in a verdict for the plaintiff.   The defendant having made application to the chancellor to set aside the verdict, and for a new trial, an order was made on the 6th of February, 1843, by which it was referred to Horace B. Webster, Esquire, a master in chancery, to take proofs upon the issue joined, as to the adultery charged in the bill against the defendant.   In pursuance of this order, witnesses were examined before the master, and on the 25th of July, 1843, he reported the proofs to the court, with his opinion that the adultery charged against the defendant had not been proved.   On the 4th of September, 1843, an order was made referring the cause to the vice chancellor of the third circuit, to hear and determine, with directions to decree a divorce, if he should be satisfied, from the evidence taken before the master, that the defendant had been guilty of the adultery alledged, and to dismiss the bill, if not so satisfied.   The cause having been argued before the vice chancellor, a decree was made on the 25th day of June, 1845, dismissing the bill.   From this decree the plaintiff appealed. The proofs taken before the master sufficiently appear in the opinion of the court.

*M. T. Reynolds,* for the plaintiff.

*S. Stevens,* for the defendant.

Van Epps *v.* Van Epps.

*By the Court,* HARRIS, P. J.　The parties to this suit were married in October, 1840. The adultery charged is alledged to have been committed with Jane Bruce, who is proved to have been a woman of abandoned character, and to have kept a house of prostitution. It is proved that, for a considerable period before the defendant's marriage, an intimacy had existed between him and Mrs. Bruce. At one time, for a month or more, she occupied a back room in his law office, where they both slept. Mrs. Bruce, who was examined as a witness for the defendant, herself states that the defendant had been in the habit of visiting her before his marriage. She says that "since the marriage he has had no intercourse with her," but she is emphatically silent as to the nature of their intercourse before. This intimacy does not seem to have been at all interrupted by the marriage. In the winter of 1841, but a few months after the defendant's marriage, we find him at the house of Mrs. Bruce, confined there by severe illness, which continued for several weeks. During this illness he was nursed by Mrs. Bruce, who occupied the same room with him. When his health became sufficiently restored to enable him to ride out, he and Mrs. Bruce went together to Chatham, a distance of some twenty miles, and he again returned to remain with her several days longer. After this, and up to the time of filing the bill in this cause, in September, 1841, the defendant continued his visits at the house of Mrs. Bruce, and, in several instances, is proved to have remained there all night. To this extent all the witnesses agree. Mrs. Bruce herself admits the intimacy, and that it continued. That there was an illicit connection before the marriage of the defendant can scarcely be doubted. Mrs. Bruce herself does not deny it. The fact that the previous intimacy was not interrupted after the marriage, leads almost irresistibly to the conclusion that the defendant's *ante nuptial* immorality was succeeded by *nuptial* infidelity. " Courts," said Lord Stowell in *Chambers* v. *Chambers,* (1 *Hagg. Cons. Rep.* 444,) "must not be duped. They will judge of facts, as other men of discernment do, exercising a sound and sober judgment, on circumstances that are duly proved before them." The same

judge, in *Williams* v. *Williams*, (*Id.* 299,) said, "It is a fundamental rule of evidence upon this subject, that it is not necessary to prove the direct fact of adultery." In every case, almost, the fact is inferred from circumstances, *ex actibus propinquis*. "What are the circumstances which lead to such a conclusion," said the judge in the case last cited, "can not be laid down universally. The only general rule that can be laid down on the subject is, that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion." Upon these principles, if it be assumed, as I think it must, that before the defendant's marriage an illicit intercourse had existed between him and Mrs. Bruce, it is fairly to be inferred that such intercourse was continued afterward. Else why continue his visits to her house? Why leave his own wife and bed and seek the society and bed of a prostitute, if not to gratify his criminal purposes? It has been held that a wife's going to a brothel with another man, is evidence of adultery. (*Shelf. on Mar. and Div.* 409.) The reason is, that it is not to be conceived that a woman would go to such a place but for a criminal purpose. So, too, if a man go to a brothel and remain alone for a considerable time with a woman, it is sufficient evidence from which to infer adultery. "I will not say," said Lord Stowell in *Astley* v. *Astley*, (1 *Hagg. Ecc. Rep.* 714,) "that, if a married man goes to a brothel, he being perfectly aware of the nature of the house, it does not supply an equal presumption of guilt, as in the case of a wonan. But supposing the court not inclined to push this presumption so far as to hold the proof conclusive, still it cannot be denied that such conduct furnishes a violent suspicion—a suspicion that must be rebutted, if rebutted it can be at all, by the very best evidence." In the case under consideration, the circumstances appear to me to raise so strong a suspicion of adultery, that I can scarcely conceive of evidence sufficient to rebut it. Certainly, it is not rebutted by the evidence in the case. On the contrary, the weight of the direct evidence goes very far, I think, to strengthen the presumption of the defendant's guilt. This will be manifest upon a brief review of the testimony.

Van Epps *v.* Van Epps.

Colonel Hogan testifies that while the defendant was sick at Mrs. Bruce's house, in the winter of 1841, he frequently called to see him, and on one occasion he found the defendant in bed, and Mrs. Bruce in the same bed with him. She was in her night clothes, and the dress she usually wore was hanging on a chair. The bed they occupied appears to have been the only bed in Mrs. Bruce's apartments, except one up stairs, occupied by a small colored boy. Williams also testifies that he saw the defendant and Mrs. Bruce in bed together at the house in Union-street, while the former was there sick. It is true that Dr. Van Olinda thinks the plaintiff, while in Union-street, was too sick and feeble to have had sexual intercourse ; but he admits that when he was sufficiently recovered to be able to ride thirty miles, his capacity to commit adultery might also be restored. The testimony of these witnesses, if it is to be credited, at least shows the degree of familiarity which at that time existed between the parties, and the abundant opportunity they had, if they possessed the inclination and ability, to indulge their criminal desires. The evidence does not warrant the conclusion that during the entire period of the defendant's cohabitation with Mrs. Bruce in Union-street, he was physically incapable of criminal connection. And if there was a time in the progress of his convalescence, when he was capable of such connection, we are bound, as I understand the rules of evidence applicable to the case, to infer such connection from the facts proved. " It is possible," says a learned writer, " that persons may be in the same bed together without criminal intercourse. Courts of justice, however, cannot proceed on such ground. Finding persons in such a situation as presumes guilt *generally*, they must presume it in all cases attended with those circumstances. They cannot adopt the extravagant professions of Platonism for the principles of their decisions." (*Shelford on Marriage and Divorce*, 408.)

Eliza Preston, a woman of ill fame, testifies that she hired a room of Mrs. Bruce, in Hawk-street, from the fourth of July until the latter part of September, 1841 ; that in the latter part of September she was in the bed room of Mrs. Bruce one evening

Van Epps v. Van Epps.

and saw the defendant there in bed, and Mrs. Bruce sitting on the side of the bed ; that the defendant appeared as if he had been drinking a little too much ; that she remained in the room talking with him a little while and then left ; that she went to the room again the next morning and then saw the defendant in bed, and Mrs. Bruce getting out of the bed ; that she stepped back and waited until she thought Mrs. Bruce was dressed, and then returned. She then found Mrs. Bruce in the sitting room putting on her clothes, and the defendant still in bed. An attempt was made to show that Mrs. Bruce was absent from the city at the time spoken of by this witness, but I think the attempt must be regarded as unsuccessful. Mr. Betts, who was the agent of her landlord, proves that she was at home on the 30th of September, and, although other witnesses say she did not return until the early part of October, I think they are more likely to be mistaken than Mr. Betts, for he is guided in his recollection by his own entry of the receipt of the rent of the house. Martha McCabe, another occupant of the same house in Hawk-street, testifies that in the winter of 1842, she went into Mrs. Bruce's room one morning and saw her with the defendant, both undressed and in bed together ; that her own bed room joined that of Mrs. Bruce, and during the night she could hear them converse together ; that when she saw them in bed together she was called in by Mrs. Bruce, who requested that she should bring them some brandy ; that she took them the brandy, that both drank, as well as herself, and then both lay down again.

The testimony of either of these two witnesses is undoubtedly sufficient, if it is to be believed, to establish the charges against the defendant. They are, however, both of them women of bad character. Their own testimony furnishes proof of their degradation. Such testimony can not be received too cautiously, and perhaps ought not to be relied upon at all, except when sustained by other proof, or the circumstances of the case. And yet, in cases like this, there seems to be a kind of necessity for resorting to such evidence. *In re lupanari, testes lupanares admittentur.* Here the witnesses, though degraded, have stated

nothing which we were not, from the admitted facts in the case, prepared to hear. The whole complexion of the case confirms all they have said. Some witnesses have been called to show that these women have made statements inconsistent with their testimony, but I have been unable to perceive any thing in the evidence introduced for this purpose, sufficient to convict them of an intentional disregard of truth. My own conviction, from a full examination of the whole case, is, that their testimony is substantially true.

The defendant has examined Mrs. Bruce herself, as a witness. Her testimony, like that of all the other witnesses who have any knowledge on the subject, shows the existence of a continued intimacy between her and the defendant after his marriage. But she says that "*since his marriage the defendant had never had any intercourse with her.*" She also denies that she ever slept in the same bed with the defendant in the house in Hawk-street. This testimony, though positive, I can not regard as sufficient to overcome the weight of evidence, direct and circumstantial, tending to establish the defendant's guilt. If the women whose testimony is directly opposed to her's, are unworthy of belief because they are prostitutes, her testimony is also affected by the same taint. Besides, she is *particeps criminis*, and, though a competent witness, her testimony is for that reason to be listened to with the greater caution. She testifies under strong inducements to deny her own guilt, and thus protect her friend and paramour. In *Astley* v. *Astley*, above cited, it was proved that Sir Jacob Astley had gone to a house of ill fame, and while there had gone up stairs with one Lucy Burbidge and remained alone with her at least a quarter of an hour. To rebut the presumption of guilt arising from this proof, Burbidge herself was called as a witness, and denied that while she was with Sir Jacob they committed adultery. The court said "it is impossible that we can give any credit to her denial. She is a witness not to be listened to." In this case, the inducements for Mrs. Bruce to conceal the defendant's guilt are so strong, that I can not see how she is to be believed, against the decided and unequivocal evidence in the case, forcing upon the

mind a conviction of the defendant's guilt. Against all this evidence, her denial, however positive, can not be allowed to prevail.

I have thus referred to the principal points of the evidence bearing upon the main question. I do not deem it necessary to notice the other testimony more in detail. To me, the whole aspect of the case appears extremely unfavorable to the defendant. I find in it no circumstances of extenuation. The fact that before his marriage he was willing to harbor, in his own place of business, a notorious prostitute, furnishes strong evidence that he was then addicted to the most shameless debauchery. The fact that he is found leaving the innocent pleasures of his own bed, to associate with degraded women, shows that his marriage had wrought no change in his licentious habits. The fact that so soon after his marriage he is found abandoning the society of his youthful wife, and resorting to the house of prostitutes, is evidence of a degree of deliberate depravity, not often witnessed. In view of these general features of the case, and connecting the direct evidence with the defendant's general habits and conduct, as proved, I can not hesitate in the conclusion that the adultery charged is satisfactorily established. The decree of the vice chancellor should therefore be reversed, and the usual decree for a divorce entered.

WATSON, J. concurred.

PARKER, J. dissented.

                                        Decree accordingly.