### JACOB G. FOULKS v. ANTHONY ARCHER.

In an action of *crim. con.* the defendant may be asked, on his cross-examination, whether he had sexual intercourse with the wife before her marriage to the plaintiff.

In error to Ocean County Circuit Court.

This was a writ of error to the Circuit Court of the county of Ocean, and was argued before Justices ELMER, BROWN, and VAN DYKE, by *A. McLean*, for plaintiff in error, and *J. D. Bedle*, for defendant.

ELMER, J. The only error relied upon in this case was, that the court, upon the trial, refused to overrule, as incompetent, the following question asked of Foulks, the defendant, while under cross-examination, *viz.*, "Did you have any sexual intercourse or connection with Beulah (the plaintiff's wife), between the time she came to your house to live and the time she was married?" It appears by the bill of exceptions

that the witness was told he could do as he chose about answering the question, and he said, I shan't answer that question.

The action was in case for criminal connection with Archer's wife, and the adulterous acts were laid with a *continuando*.

It was urged in objection to this question, that it was not competent to inquire whether there had been a criminal connection before the marriage took place, or at any time outside of the time laid in the declaration. Whether this can be done by the plaintiff as a distinct ground or in aggravation of the damages, it is not necessary to determine. *State* v. *Bates*, 10 *Conn. R.* 372; *Gardner* v. *Madeira*, 2 *Yeates* 466; 14 *Pickering* 518; 2 *Greenl. Ev.*, § 41, 42.

The question was asked in this case by way of cross-examination, where a great latitude of examination is sometimes permitted in the sound discretion of the court, and is often essential to the discovery of the truth, even in the case of apparently disinterested witnesses, and much more so now when the party is allowed to testify for himself. In the case of *Gardner* v. *Madeira*, the court held that although such evidence was inadmissible in the first instance; after laying a reasonable ground to infer an improper connection between the parties within the limited period, the court will be more liberal afterwards in receiving other evidence of indecent conduct at different times, tending to show the criminal views and acts of the parties.

The proof of adultery need not be direct and positive. In every case almost, the fact is inferred from circumstances which lead to it by fair inference as a necessary conclusion. 2 *Greenl. Ev.*, § 40. Such circumstances had been proved in this case; it being testified that the parties had been seen together during the times stated in the declaration, in such a position on a bed as led naturally to the supposition that they were guilty of adultery. The defendant himself set up that the wife had had a child before her marriage. He admitted that she had lived in his family several years, and that his intimacy with her continued after she left him and

after marriage. He paid the expenses of her lying-in, and took the child to bring up as his own. He denied the truth of the statements made by the witnesses as to the particular circumstances of their being together on the bed, and in answer to the question whether he had had adulterous intercourse with her after her marriage, he answered, unequivocally, no. Under these circumstances I think the question objected to was a fair question to enable the jury to judge of his credibility—to show whether the previous bad character attributed to the wife was such as ought to mitigate the damages and to characterize such acts of the parties, after the marriage, as may have been proved to the satisfaction of the jury. The relations, whether of friendship, blood, confidence, gratitude, hospitality, or the like, which subsisted between the parties, and the circumstances attending the intercourse at the time the adultery was alleged to have taken place, were proper subjects of inquiry in reference to the damages, and were more or less involved in the defendant's answer to the question put to him. 2 *Greenl. Ev.*, § 55; *Van Eps* v. *Van Eps*, 6 *Barb.* 320.

In my opinion there was no error in the ruling of the court, and the judgment must therefore be affirmed.

Brown, J., concurred.

Van Dyke, J., dissenting. This action is brought against the defendant for criminal connection with the plaintiff's wife during their coverture, which lasted from May 26th, 1861, until the 30th of September of the same year, when she died.

The plaintiff offered sufficient evidence to justify the jury, if they believed it, in finding that the connection charged had taken place on more than one occasion, and then rested his cause.

The defendant offered only himself as a witness, and denied the particular occurrences described by the plaintiff's witnesses, which, it was supposed, proved the charge against

him, and denied that he had ever had any connection with the plaintiff's wife, after she became such. On the cross-examination the plaintiff's counsel again asked the defendant whether he had not had adulterous connection with the plaintiff's wife *after* her marriage, and he answered explicitly that he had not. The plaintiff's counsel then asked him if he had not had such intercourse with her within a certain period *before* her marriage. To this question the counsel for the defendant objected, but the objection was overruled by the court and the question was allowed to be put. To this ruling exception was prayed and allowed. The court then informed the defendant that he might answer the question or not, as he saw fit, and the defendant declined to answer it.

If this evidence had been competent in itself, and the question a lawful one in the case, I would think the court properly disposed of it; but the evidence itself, if offered to be proved by *any* witness, was, in my opinion, wholly incompetent and immaterial, because it was wholly outside of the issue between the parties. If the defendant had expressly admitted that he had had this kind of connection repeatedly with the plaintiff's wife before her marriage, and if this kind of evidence had been piled up mountain high, it cannot be pretended that the plaintiff would have been entitled to a verdict on such kind of evidence alone; no amount of it could go one step towards proving the plaintiff's claim. It is not the thing of which the plaintiff complains—it is not the thing which the defendant has denied in his plea, and it was not the thing that the jury were sworn to try. The plaintiff could not be damaged, legally, by a connection with his wife before he was married to her and before he knew her; and if the plaintiff, before he rested his cause, had offered to prove the same fact by any other witness, it seems impossible to believe that such testimony could have been lawfully admitted. Now, when a *party* to a suit is placed on the witness stand, either at his own instance or that of his adversary, he is to be treated precisely as any other witness; and nothing

on the one side or the other can be proved by him that could not lawfully be proved by any other competent witness. Incompetent testimony cannot be given by any one.

There is no principle on which the evidence can be legalized. It was suggested on the argument that it might be received to enhance the damages; but this is precisely where the principal error lies. It *was used* to enhance the damages and doubtless did enhance them—at all events it was well calculated to do so, when in truth no damages arising from the facts sought to be proved could legally be taken into consideration by the jury.

It was supposed, also, that this evidence could be used to impeach in some way the credit of the defendant as a witness, but it is very certain that his credit as a witness cannot be impeached in that way. If any other witness had been offered to prove, by way of impeaching his credit, that he had witnessed such a connection before the marriage, such evidence should certainly have been overruled, simply because it would have been incompetent. The credit of a witness for truth and veracity cannot be impeached by showing that he is licentious, or that he has been guilty of other crimes, unless it be to show that he has been *convicted* of such an offence as would render his evidence entirely incompetent. It can be impeached only by showing that his character for truth and veracity is bad. This might be done by the witness himself, because the evidence is competent and could be proved by any witness. But evidence that is illegal in itself can never be made lawful by the fact that you are obtaining it from one of the parties to the suit when on the witness stand; because, as we have seen, you cannot prove any fact by a party when he becomes a witness, that you might not lawfully prove by some other witness.

It was also insisted that this question was proper because it was put upon a cross-examination. But this was not a cross-examination. The witness had not said a word on the subject in his examination in chief. Nothing was asked him on the subject and he volunteered nothing. His answers were

confined to the issue, and were made up mainly in admitting and explaining some of the facts previously testified to, and in denying the facts proved against him by competent evidence. The evidence was clearly evidence in chief, and wrong, for that reason, at the time it was offered; introduced, it is true, on a cross-examination, but presenting new matter in behalf of the plaintiff that had not been before alluded to by any one, and making a point not raised by the defendant but by the plaintiff himself. The defendant had said that he had had no connection with the wife after her marriage. This was within the issue, and the plaintiff had the right to a very minute cross-examination on the subject; but when he left this and introduced entirely new matter and a new subject, it was no longer a cross-examination. But if it be admitted to have been a cross-examination, this could not make the introduction of a foreign and immaterial matter legal when it was otherwise improper, unless it had been previously introduced through the witness in his examination in chief. You can no more prove an illegal thing on a cross-examination than you can by evidence in chief.

It is impossible to close our eyes to the injury done to the defendant by permitting this question to be put. It is possible that the jury might have found the verdict they did without it, but it is quite possible they might not. They might have doubted the correctness of the plaintiff's evidence, as in some respects they had reason to do, and with the express denial of all the essential parts of it by the defendant, they might have preferred to believe him and have found the other way; but if the admission could be obtained from the defendant himself, either directly or indirectly, that he had had connection with the woman before her marriage, it is not difficult to see how easy and natural a thing it was for the jury to reason and conclude from that, that it was exceedingly probable he had also had this connection with her afterwards. This was sufficient to turn the scale against him. The question allowed to be put required the defendant, in

substance, to make this admission, for it left him no alternative but to admit it, if true, to perjure himself by a denial or to refuse to answer the question, which every one must see was equivalent, in its effect under the circumstances, to an admission. It is true, if the question had been a proper one the defendant might have been fairly subjected to this ordeal. He was subjected to it when the question was asked him if he had not had such connection after the marriage. But even this question he was not bound to answer, and the court might properly have so informed him, although he did not ask any such protection. But the question objected to was a very different one, being immaterial and unlawful in itself, and being in its nature exceedingly damaging, if allowed to be put, whichever way disposed of or answered. The court, I think, instead of ordering it to be put should have interfered to prevent it, without even subjecting the defendant to the necessity of objecting to it; for the mere objection to it on the part of counsel, even if the objection had been sustained by the court, we cannot fail to see would have been injurious to the party. But to compel the defendant to object to such a question, and then to have the objection overruled, and the party constrained in the presence of the jury to refuse to answer, and thus in effect convict himself, was, I am forced to think, not only a great hardship but legally erroneous. Look at this matter as we may, it resolves itself to simply this : it was an effort to prove the commission of one offence, by showing that he had previously committed another somewhat like it—an attempt to show that the defendant had committed adultery with the woman by proving that he had previously committed fornication with her. It is precisely like the effort to prove grand larceny against a defendant by showing that he had previously committed petit larceny against the same person. This would be a very persuasive and generally effective kind of evidence in all such cases, but it is, nevertheless, very illegal; and yet this principle, so subversive of the well known rule of evidence on that subject, was turned

with all its force and damaging effect against this defendant. The ruling of the court therefore was, I cannot but think, legally erroneous, and for this reason the judgment should be reversed and a new trial had if desired.

Judgment affirmed.