### STEFFENS v. STEFFENS.

*(Common Pleas of New York City and County, General Term.   November 3, 1890.)*

1. COMPETENCY OF WITNESS—DIVORCE FOR ADULTERY.

Code Civil Proc. N. Y. § 831, as amended in 1887, permitting either the husband or the wife to become a witness in an action brought by the other to procure a di-

vorce on the ground of adultery, for the purpose of disproving the charge of adultery, does not limit the party to a bare denial of the charge, and he or she may testify to any facts tending to disprove the facts advanced to support the charge, or to avoid the inferences to be drawn therefrom.

2. DIVORCE—ADULTERY—EVIDENCE.

   In an action for divorce on the ground of the wife's adultery, the evidence principally relied on was the testimony of one B., to the effect that he had had undue intercourse with her in the open fields in the night-time. No attempt was made to show by other witnesses that the parties were seen in or near the fields mentioned, and there was no proof of amorous conduct, or a criminal attachment between them. Incidents relied on as corroborative of B.'s testimony were of a trifling character, not incompatible with defendant's innocence. Attempted proof of defendant's misconduct with two other persons rested exclusively on the surmises of defendant's servants, and their testimony as to admissions by defendant. *Held,* that a finding by the referee in favor of defendant would not be disturbed, the evidence being very conflicting, and the statements of the witnesses contradictory.

Appeal from judgment entered upon the report of a referee.

Action for divorce on the ground of adultery brought by Christopher Steffens against Lottie L. Steffens. From a judgment denying a divorce, plaintiff appeals.

Argued before LARREMORE, C. J., and DALY and BISCHOFF, JJ.

*Dailey & Bell,* (*A. H. Dailey,* of counsel,) for appellant. *Horace Graves,* for respondent.

BISCHOFF, J. This action was brought by plaintiff for a divorce from the defendant on the ground of her alleged adultery. The defendant in her answer denies the commission of adultery, and makes counter-charges of marital infidelity against her husband, and asks for a dissolution of the marriage on that account. The issues were referred to J. H. V. Arnold, Esq., as referee, before whom the parties duly appeared, and each contested the accusations of the other. The referee reported to the effect that neither of the parties had been proven guilty of the offenses charged, which report was duly confirmed, and judgment denying a divorce to either party was thereupon entered. From this judgment plaintiff has appealed to this court. Careful scrutiny and consideration of the case on appeal fail to disclose any error in the conclusions of the referee, either upon questions of fact or of law. The exception of the plaintiff to the admission of the defendant's testimony in denial of the attempted proof of her adultery is not well taken. By section 831 of the Code of Civil Procedure, as amended in 1887, a party to an action for divorce charged with the commission of adultery is competent as a witness on his own behalf to disprove the charge. This does not mean that the party is limited to a bare denial of the charge. He may testify to any facts or circumstances tending to disprove the facts and circumstances advanced to support the charge or to avoid the inferences to be drawn therefrom. *Irsch* v. *Irsch,* 12 Civil Proc. R. 181. A more serious question, however, arises on the sufficiency of the evidence relied upon by the plaintiff as corroborative of the testimony of Hiram Bull, the alleged paramour of the defendant. The evidence submitted on this appeal fails to disclose any successful attempt by the plaintiff to substantiate the charge of adultery against the defendant, either circumstantially or directly, other than by the testimony of the alleged paramour. And a paramour, being *particeps criminis,* has always been classed with other accomplices whose testimony is relied upon to prove the guilt of the accused, and whose testimony has always been held to be subject to the same objections. One of these objections is that the testimony of an accomplice should not be deemed sufficient to warrant a conviction, unless such testimony is corroborated in some material part by one or more credible witnesses. This requirement of corroboration, however, seems rather to be a precaution on the part of the court than a rule of law. Such precaution, so far as it is applied to the testimony of paramours, is mainly founded upon the inability of the party charged with adultery to contradict the testimony of the alleged paramour, because of the legal incompetency of husband or wife to testify as witnesses

in actions for divorce brought by either against the other.   2 Bish. Mar. &
Div. § 642, notes 1, 2, 4; Stew. Mar. & Div. §§ 247, 352, and cases there cited;
*Platt* v. *Platt*, 5 Daly, 295; Anon., 17 Abb. Pr. 48; Anon., 5 Rob. (N. Y.)
611; Tayl. Ev. § 967; 1 Greenl. Ev. §§ 380, 381.   Since the amendment
of section 831 of the Code of Civil Procedure, permitting either the husband
or the wife to become a witness in an action brought by the other to procure
a divorce on the ground of adultery, for the purpose of disproving the charge
of adultery, the force of the reason requiring corroboration of the alleged par-
amour's testimony has been considerably weakened, and the sufficiency of the
alleged paramour's testimony ·must now depend mainly upon the degree of
credibility a judge or jury sees fit to attach to it; and, since such amendment,
the refusal of the person charged with adultery to deny as a witness on his
or her own behalf the truth of the alleged paramour's testimony may, of
itself, be considered corroboration of that testimony.   So, also, proof of the
lewd, lascivious, and lustful disposition or inclinations of the person charged
with adultery may be sufficient corroboration of the alleged paramour.   The
consideration of the question of corroboration, however, does not appear to
be applicable to the present case.   I fail to discover in the evidence submitted
any proof of lewd or lascivious inclinations on the part of the defendant, out-
side of the testimony of Hiram Bull, to which I shall again refer.   The oc-
currences participated in by the defendant in the villages of Hillsdale and of
Munroe where she and Hiram Bull, in the presence and for the amusement
of others, masqueraded and frolicked, the defendant's attempt to inflict play-
ful blows upon William Bull on the occasion of the celebration of the anni-
versary of his twenty-first birthday, and the social games at the house of
Harrison Bull, appear to have been nothing more than puerile sports and pas-
times, and it would require a certain degree of moral debasement to seriously
construe participation in these occurrences to be proof of lewd or lascivious
conduct on her part, to which I would be reluctant to confess.   It may have
been unwise, looked upon from the standpoint of purely conventional pro-
priety, for the defendant to have taken part therein; but in the consideration
of defendant's guilt it manifestly would be unfair to interpret her actions
by one's own notions of what may or may not be proper conduct on the
part of a married woman, so long as such conduct does not border on immor-
ality.   The circumstances relied upon to establish the lustful disposition of
the defendant in *Pfeiffer* v. *Pfeiffer*, 9 N. Y. Supp. 28, were much stronger
than those relied upon in the present case; yet the court held in that case
that though the acts of the defendant might appear suspicious and improper,
but are capable of an innocent interpretation, they must be so construed,—a
proposition which the presumption of innocence in the absence of proof of
guilt makes imperatively applicable.

Hiram Bull, the alleged paramour, testified to undue intercourse with the
defendant in open fields in the night-time in or near the village of Munroe;
but it was not even attempted on the part of the plaintiff to show by the tes-
timony of any other witness that the defendant and Hiram Bull, at or about
the times stated by him, were seen in or near the fields mentioned.   And this
case is also wholly barren of proof tending to establish amorous conduct be-
tween Hiram Bull and the defendant, or a criminal attachment on the part
of the latter for the former.   Nor have I failed to observe that, for the pur-
pose of establishing such conduct and attachment, the plaintiff lays great
stress upon one occasion when the defendant and Hiram Bull, in the pres-
ence of their respective mothers and others, were reclining on the lawn
immediately in front of their then residence, with her head resting upon
or against his person, but it would require something more than a mere
stretch of the imagination to distort this single occurrence into proof of
a criminal attachment on the part of the defendant towards Hiram Bull.
The conduct of the parties was not clandestine or accompanied by anything
tending to establish consciousness of wrong-doing on the part of the defend-

ant. Hiram Bull at this time appears to have been a lad hardly 17 years of age, while the defendant was scarcely 21, and however reprehensible her conduct may have been, because of this familiarity, owing to its likelihood to subject her to censure and adverse criticism, it is not improbable that, in the exuberance of youthful spirits, the defendant was more thoughtless than she would have been if she had arrived at maturer years. Under the circumstances it would be monstrous in the extreme to hold that this isolated occurrence branded the defendant with the mark of degradation, and established her inclination to surrender her matronly virtue to Hiram Bull. Conceding, however, for the moment, that the contention of the learned counsel for the plaintiff, appellant, is correct, and that evidence of undue familiarities towards persons of the opposite sex other than Hiram Bull is admissible in corroboration of his testimony, I do not hesitate to say that the evidence adduced for the plaintiff falls short of establishing such undue familiarity. Such evidence, so far as it relates to Byrnes, and is explained by his uncontradicted testimony, and the testimony of the defendant, amounted to nothing more than the acceptance of mere conventional gallantry extended to the defendant by him; and the incident of the letter from the defendant to the plaintiff falsely representing that she had not visited New York on the occasion of her trip there, accompanied on the railroad train by Byrnes from Hillsdale to the Grand Central Depot, convicts her of falsehood, but of nothing more. It is true that it may seem unaccountable that she should have been guilty of this falsehood, but is it a just or reasonable inference, because the defendant had sought to hide from the plaintiff her visit to the city, that she must have been criminally intimate with Byrnes, without the slightest proof of any opportunity therefor? The other acts of undue familiarity with persons other than her husband, consisted of suffering herself to be kissed by a Mr. Forbes, a Mr. Sayre, and a Mr. Harrison Bull, on the occasion of social festivities at the latter's house, and while participating in harmless games common to the people of Munroe. In participating in these games without the presence or the previous sanction of her husband, the defendant may have been indiscreet, but I am utterly unable to share the view that such indiscretion tends to convict the defendant of marital infidelity. Other incidents urged by the plaintiff as corroborative of Hiram Bull's testimony were that on one occasion she kissed one Everitt McDonald, who was residing at her husband's house, and that on another occasion, and while McDonald was confined to his bed by illness, but without any attempt at secrecy, she entered his bedroom, remaining there but a very short time, her servant Margaret Flynn being in an adjoining room all the time, and knowing of her presence in the bedroom. In the light, however, of the uncontradicted testimony for the defense, that McDonald was a near relative of the defendant, I would hesitate to convict her of adultery, even though she may not have denied these incidents. The attempted proof of misconduct with Gibbs seems to rest exclusively on the surmise of the defendant's servants, Margaret Flynn and Margaret Neville, seemingly without justification. It appears that Gibbs resided with his mother on Fifty-Seventh street, near Ninth avenue, in the neighborhood of plaintiff's residence; that his place of business was in the lower part of New York; that he was in the habit of taking the cars for down town at or near the corner of Fifty-Seventh street and Ninth avenue, at which place the defendant's servants, from the rear windows of plaintiff's apartments on Fifty-Eighth street, corner of Ninth avenue, had frequently seen him standing; that on several occasions these servants had observed a meeting between Gibbs and the defendant; that defendant had vouchsafed no explanation to her servants of these meetings; and that with no proof that they had been prearranged, and only because of the defendant's reticence in speaking of them to her servants, they, the servants, concluded an intrigue existed between the defendant and Gibbs.

. The evidence as to alleged undue familiarity with and as to correspondence between the defendant and Faircloth exists only in the testimony of the defendant's servants to the effect that the defendant had admitted to them that she had entertained an affection for Faircloth, and had maintained a correspondence with him, and that on the occasion of her visits to her aunt, Mrs. Phelps, in Jersey City, she had met Mr. Faircloth at her aunt's, where Mr. Faircloth and his wife were lodgers. I fail to see anything suspicious in these meetings between the defendant and Faircloth, and, in view of his most positive denial of ever having received any letters from the defendant, and the defendant's equally positive denial of ever having corresponded with him, and also her denial of her ever having admitted to them an affection for him, I am not inclined to place any reliance upon the testimony of the servants as to these admissions. Such testimony does not directly establish the facts alleged to have been admitted. The accuracy of the repetition of admissions is dependent entirely upon the witness' intelligence, the reliability of his recollection, the correctness of his understanding, the difficulty of imparting the inflections or deflections of voice, and the gestures accompanying the alleged admissions, the reproduction of all of which is essential to correctly convey the meaning of language employed in making the alleged admissions. Such testimony has always been regarded as evidence of the lowest order, to be accepted only with jealous caution. 1 Greenl. Ev. § 200. The testimony of Hiram Bull, the alleged paramour, bristles with improbabilities, and should be rejected even though corroboration should not be requisite. It is difficult to understand how a lady of culture and refinement, such as the evidence shows the defendant to have been, with her chastity up to the time referred to unimpeached, could have submitted herself to the criminal embraces of a paramour without previous amorous regard and affection having been established between them. According to Hiram Bull's story, we are asked to accept as true that he and the defendant, on the occasions detailed in his testimony, without previous understanding, without the exchange of a single word expressing the intention of either party to meet the other with intent to gratify his or her lustful desires, or the occurrence of anything justifying in the slightest degree any suspicion on the part of Hiram Bull that the defendant would yield herself to him, impulsively proceeded towards the places where the acts of adultery are alleged to have been committed, and, arriving there, and still under the same impulses, and without communication by one to the other of his or her desire, they had sexual intercourse. Hiram Bull, while on the witness stand, was utterly unable to account for the defendant's submission to him other than the reason (as he stated) that the defendant yielded to him because she was overcome by his personal beauty. I desire in this connection also to call attention to the fact that the evidence shows that after the institution of this action, and subsequent to the time when, as is alleged, the plaintiff had acquired knowledge of the betrayal of his wife by Hiram Bull, and that the felicity of his home was terminated by her betrayal of him, he seems to have harbored the alleged paramour as a welcome visitor, and to have hospitably entertained him for several days. It may be that the plaintiff believed that to secure the testimony of the alleged paramour it was prudent to maintain apparently friendly intercourse with him for the time being; but, if so, it scarcely justifies the claim of plaintiff's counsel that, inspired by a higher standard of morality, of recent acquisition, and impelled by a spirit of repentance, and a desire for atonement, Hiram Bull sought to make all possible reparation to the injured husband, and came forward voluntarily to confess his share in the wrong, and assist the plaintiff in ridding himself of an unfaithful wife. Fully satisfied, as I am, that the referee correctly ruled upon the legal questions raised upon the trial of this action, I do not hesitate to say that his conclusions upon the facts are fully justified by the evidence. To support his claim for dissolution of the bonds

of matrimony with the defendant, a plaintiff must establish the commission of the act of adultery charged by a preponderance of evidence. If the weight of evidence be evenly balanced, or preponderate in favor of a defendant, the plaintiff has failed to show himself entitled to the relief claimed. To arrive at a just conclusion when the evidence is conflicting, and the statements of the witnesses contradictory, the observance of the witnesses while under examination as to their manner and demeanor is essential to establish the degree of credibility which should be given to their testimony. In the present case, the referee, in his opinion accompanying the report, places his disbelief of the testimony of Hiram Bull not only upon the inherent improbability of the truth of his statements, but also upon the manner and conduct of the witness while under examination, and his demeanor when giving his testimony. In such cases, in the absence of apparent injustice or gross and flagrant disregard of the evidence, the appellate court should not interfere. In *Westerlo* v. *De Witt*, 36 N. Y. 344, Judge HUNT says: "The general disposition of the courts is to sustain the referee in his findings of fact. * * * This is not precisely the same question as if we were inquired of whether we should have found the same facts and have determined the law in the same manner. It is rather, are we so certain that the referee was in error upon the facts that we will assume to reverse his judgment? If the case is doubtful, the conclusion should not be reversed. If, upon reading the evidence, this court should be of the opinion that the conclusion might well have been either way, then the fact that the referee saw the witnesses, heard them testify, and had the nameless opportunities of judging of their character that personal acquaintance can only give, should induce us to defer to his judgment." See, also, *Baird* v. *Mayor*, 96 N. Y. 567; *Sherwood* v. *Hauser*, 94 N. Y. 626; *Parrott* v. *Ice Co.*, 46 N. Y. 361. The judgment appealed from should be affirmed, with costs.

All concur.