Jennie T. Hutchinson *v.* Joseph Hutchinson.

(Supreme Court, New York Special Term, March, 1907.)

Divorce — Evidence — Quantity of proof and probative effect of evidence — Adultery — Co-existence of opportunity and inclination.

Where, in an action for absolute divorce, the plaintiff relies upon circumstantial evidence and situations claimed to necessitate the conclusion of adulterous conduct upon the part of defendant, the court must inquire whether opportunity for and inclination toward wrongdoing have been sufficiently proved.

The evidence as to inclination as well as opportunity must be such as to lead a reasonable man to conclude that the adulterous act has been committed; and mere opportunity, even though prolonged and inviting, cannot, in itself, be a sufficient basis upon which to predicate inclination toward wrongdoing.

Action for an absolute divorce.

Stern, Singer & Barr, for plaintiff.

James B. Butler, for defendant.

BLANCHARD, J. This is an action for an absolute divorce in which the plaintiff has failed to prove any carnal act, but relies upon circumstantial evidence and situations which she claims necessitates the conclusion of adulterous conduct on the part of the defendant. From the necessities of proof in actions for divorce the court must usually deduce from circumstantial evidence the fact of wrongful conduct on the part of the guilty party, and in considering the evidence the court must inquire whether opportunity for wrongdoing and inclination toward wrongdoing have been sufficiently proved. The elements of opportunity and inclination must both be present. The evidence as to inclination as well as opportunity must be such as to lead a reasonable man to the conclusion that the adulterous act has been committed. Moller v. Moller, 115 N. Y. 466; Pollock v. Pollock, 71 id. 137; Allen v. Allen, 101 id. 658; Roth v. Roth, 90 App. Div. 87; affd., 183 N. Y. 520; Warren v. Warren, 8 Misc. Rep. 189. The evidence in the present case shows that for a year and a half the defendant was a frequent visitor at the apartment of the corespondent, an unmarried woman; that he visited her apartment on an average of twice a week, frequently taking meals at her table and often spending the evening in her home; and that on five or six occasions while the corespondent's nephew, who lived with the corespondent, was present, he slept in her apartment. Although the defendant's own family resided in the neighborhood, they appear to have been entirely unaware of the existence of the corespondent, notwithstanding the intimacy which so long existed between her and the defendant. The evidence on the part of the defendant shows that his intimacy with the corespondent grew out of friendship of many years' standing. The defendant attempts to explain his constant attendance at the corespondent's home on the ground that he was experimenting in her rooms with a new kind of gas burner, and that, being a sufferer from diabetes, he was served at intervals at the corespondent's house with food specially prepared for victims of that disease. His testimony, it is submitted, strengthens rather than weakens the case of the plaintiff. Considerable testimony was introduced tending

to show that the defendant was known among the janitors and servants in the apartment-house of the corespondent as her husband. The evidence taken in its entirety obviously shows opportunity for wrongdoing on the part of the defendant. It fails, however, to establish satisfactorily the inclination of the defendant toward adulterous conduct. " Charges of this kind," said Herrick, J., in Smith v. Smith, 89 Hun, 610, " are only to be established by clear and convincing evidence; they are so serious in their character, and the results so grave, that a court should hesitate before making a finding of guilty except when thoroughly satisfied of the truth of the charge." In searching the evidence for proof of inclination toward adulterous conduct " the circumstances must be sufficient to satisfy the mind that the adulterous intercourse has actually taken place. Though presumptive evidence alone is sufficient to establish the fact, the circumstances must lead to it, not only by fair inference, but as a necessary conclusion. Appearances that are equally capable of two interpretations will not justify the presumption. Loveden v. Loveden, 2 Hagg. Cons. R. 3, 4;" Pollock v. Pollock, *supra*. Mere opportunity, even though prolonged and inviting, can in itself never be a sufficient basis upon which to predicate inclination toward wrongdoing. In Hart v. Hart, 2 Edw. Ch. 207, Vice-Chancellor Edwards refused to confirm the report of a referee upon the ground that it " merely sets forth that the defendant is living separate from his wife and has a woman residing with him. No other cohabitation is proved." Folger, J., writing the opinion of the court in Pollock v. Pollock (*supra*), said (146): " My judgment concurs with that of Vice-Chancellor Edwards I think that proof of the parties charged, being alone together in a set of rooms at times, and passing many days in succession together there, and some evenings, is not of itself sufficient to sustain the allegation. There should be some accompanying circumstances, fitted to fairly induce a belief that it was not for a proper purpose. The being thus together, to be sure, gives opportunity. There must be more than that; some circumstances to show a disposition to avail themselves of the opportunity, and to ground an inference that they have actually

done so. Harris v. Harris, 2 Haggard, 376. The court must be satisfied that a criminal attachment subsisted between the parties, and that the parties intended to indulge in the intercourse for which they had opportunity. Davidson v. Davidson, D. & S. 132, 135; Dunham v. Dunham, *supra;* Burgess v. Burgess, 2 Hagg. Cons. R. 228. Even the repeated going of a married woman to the private rooms of an unmarried man, who was the alleged paramour, was not held enough without evidence of improper conduct while there, to warrant judgment that the adulterous act had been committed (Williams v. Williams, *supra;* and see Westmeath v. Westmeath, 2 Hagg. Supp. 1; 4 Eng. Ecc. R. 238–244)." Upon the authority of these cases it must be held that the persistence of the defendant's presence in the home of the corespondent and his constant visits there are no sufficient basis upon which to predicate an inclination toward adulterous conduct. The testimony of the janitors and servants that the defendant was known as the husband of the corespondent is not entitled to much weight. In the words of Folger, J. (Pollock v. Pollock, *supra,* 149) : " Now, it is to be observed of this testimony, in the first place, that it does not appear that the plaintiff ever knew that she was spoken to, or of, as his wife, or that she was so considered. He is not to be affected by those facts without such knowledge." Furthermore, abundant testimony was given by persons familiar with the corespondent's household that the defendant was always introduced and known by his true name. Finally, there is a complete failure of evidence of any terms of endearment of any kind, or of surprise in a compromising position, or of any other visible token of an inclination toward wrongdoing on the part of the defendant. No better comment upon these circumstances can be made than was expressed regarding a similar state of facts in Pollock v. Pollock, *supra,* 147: " It cannot escape the attention on a perusal of the testimony that no witness speaks of an act, or gesture, or word or look, of indecent or even of undue familiarity, on the part of either the plaintiff or Miss Halpin towards the other. Though the rooms in which they were shown to be together were the place of his business,

and it is shown that people went in and out there frequently; that other females went there, one of whom is designated by name; that there was a boy employed there by the plaintiff, whose name and residence are given; that a woman, whose name and residence were given, was used to go there to do housework; though the occupation of Miss Halpin while there was open to the observation of the witnesses; there is no proof of a kiss, or an embrace, or a contact or nearness of person, or an endearment of any kind, or of a surprise in an equivocal situation, or of confusion of face on a sudden entrance, or anything clandestine in conduct, or which showed a desire for secrecy or concealment, (see Dunham v. Dunham, 6 Law Reporter, 139, 141). Here is opportunity existing for at least three years, with the parties directly in the notice of the witnesses, who are of a class not likely to avert their faces if anything suspicious takes place, or to refrain from comment upon it, and not a single hint in the testimony that the usual signs were given that the opportunity was availed of. It is contrary to the usual experience of mankind, not only as gathered in one's own observation, but as disclosed by the reports of such cases, that if such relations existed between these two persons as are charged, they should not, at some time during the period, have incautiously or recklessly betrayed the fact by some of the means above specified. If the opportunity merely, is shown, there being no evidence of the will to improve it, this does not justify the inference of guilt; it must be further shown that the parties were together under suspicious circumstances, not to be easily accounted for unless they had the corrupt design (Mayer v. Mayer, 6 C. E. Green [N. J.], 246)." See also Steppens v. Steppens, 16 Daly, 363. Upon the ground indicated the complaint herein should have been dismissed, and accordingly the report of the learned referee is not confirmed.

Ordered accordingly.