ROBERT P. PARROTT, Appellant, *v.* THE KNICKERBOCKER ICE COMPANY and THE NEW YORK ICE COMPANY, Respondents.

A sailing vessel navigating a river, unless special circumstances exist making it dangerous, is entitled to take advantage of a favorable tide as well as of a wind; and in a temporary calm, or when the wind is baffling to keep in condition, to profit by any breeze which may spring up.

Under such circumstances, it is not required to anchor or take other measures to avoid collision with an approaching steamer. The steamer should calculate the course of the drifting vessel, by noting the course of the current, and should avoid it.

Interest upon the value of property lost or destroyed, by the wrongful or negligent act of defendant, is a proper item of damages.

(Argued September 6, 1871; decided November 10, 1871.)

APPEAL from an order of the General Term of the Superior Court of the city of New York, reversing a judgment in favor of the plaintiff, entered upon the report of a referee, and granting a new trial, on questions of fact as well as of law.

The action was brought to recover damages caused by a collision between the sloop Westchester, owned by the plaintiff, and the steam propeller Armenia, owned by the defendants. The collision occurred on the 14th of November, 1865, at about two o'clock A. M., in Haverstraw bay, on the Hudson river.

The sloop had left Cold Spring for New York on the afternoon of the 13th of November, laden with shot, shell and castings, and was proceeding southerly down the river, with an ebb tide. The steamer was ascending the river, having in tow four barges; one lashed to her starboard side, and three attached to a hawser about 200 feet long. The effect of the current was to set the barges to the eastward of the wake of the steamer.

The night was clear starlight; both vessels had their lights set, in accordance with the United States regulations. The river at the point of collision is about two and a half miles wide, the steamboat channel about a mile wide, from the

west shore to the middle ground. The collision occurred in the steamboat channel.

The bow of the steamer struck the sloop on her port bow, just forward of the chain plates, and she sank in a few minutes.

There was no lookout on the steamer, other than Delamater, the man at the wheel, in the pilot-house. The first pilot was in his berth, and it does not appear that any of the crew of the steamer were on deck, except the man at the wheel.

There were lookouts on the barges in tow, and there was a proper lookout on the forward deck of the sloop.

The man at the wheel of the steamer testified, that he saw the sloop approaching at the distance of a mile or a mile and a half; that he saw both her lights; that he was heading due north, and she bore a little to the eastward of him; that after that she appeared to stand more to the east, till she got within fifty yards, and then she sprang a luff and came across the bow of the steamer; that when she was within twenty-five or thirty yards he rang to slow and stop, and then the vessels collided; he did not ring to back.

The sloop was seen at the distance of about a mile by persons on the barges. Jacob Bogardus, a witness called by the defendant, who was on one of the barges in tow, testified that he saw the sloop coming, and said to his men that she was coming close, and sent word to the starboard barge of the hawser tier, to stand ready to sheer if the sloop came near; that when he first saw her, she was in a line with the port side of the steamer's smoke-stack; that as she drew near she appeared to work farther to the eastward; that he had his eyes on her all the time, because he did not know on which barge she would come. He also testified to her luffing when she got near, as did other witnesses on the barges.

There was no change in the course of the steamer, but at the time she stopped her engine she was on the same course which she had been keeping for half an hour previously.

The tide was running ebb at the rate of about two miles per hour. The steamer was making about one and a half miles per hour by the land.

The principal conflict of evidence related to the wind. Those on board the sloop testified on the part of the plaintiff, to the effect that for one or two hours before the collision, there had been no wind, except occasional puffs of air from various directions, only enough to carry the boom from one side to the other, and except that, when off Haverstraw, about half an hour previous to the collision, the sloop had had a slight breeze for about ten minutes; that that breeze died away, and that from that time to the collision the sloop was drifting with the tide, heading down the channel and having no steerage way. That the crew of the sloop saw the steamer approaching at the distance of several miles, but paid little attention to her, until she was near and heading toward them, when they became apprehensive of a collision. That as the steamer approached, the crew of the sloop hallooed to the steamer, but there was no response, or apparent effort on the part of the steamer to clear the sloop. That when the vessels got within about 100 yards of each other, a little air drew off from the west, enough to shove the boom over, but not enough to give steerage way to the sloop; that when the steamer had approached to within forty or fifty feet of the sloop, she rang to slow and stop, and in a moment afterward struck the sloop; that up to the time of the collision the sloop had no steerage way, and the puff of wind last spoken of, was only sufficient to throw her boom over to the eastward, and her bow a little to the westward.

On the part of the defendants, evidence was given by various witnesses on the barges, and elsewhere, to the effect, that at the time of the collision, there was a good wind blowing from the north-west, and some of them testified that the sloop was going at the rate of six to eight miles an hour. There was also evidence of numerous witnesses, as to declarations of the master of the sloop, inconsistent with his testimony.

The referee found, that the collision was caused by the negligence of the defendants' employes, managing the steamer, without any fault or negligence on the part of the persons managing the sloop.

The plaintiffs damages were liquidated by stipulation, with the exception of the value of the sloop, and the question of interest, which were left to be determined by the referee.

The referee allowed interest on the damages, which consisted of the value of the vessel, less the value of hull and rigging saved, the value of cargo and freight lost, and the expenses of raising the hull and cargo saved. The value of the cargo saved far exceeded the cost of raising.

*A. Smedbergh and A. J. Parker*, for appellant. No vessel has a right to come in close proximity with another, and claim exemption, because the other commits a mistake. {*Austin* v. *N. J. Steamboat Co.*, decided in Court of Appeals November 22d, 1870, N. Y. Transcript, April 13th, 1871; *The Carroll*, 8 Wallace, 302.) The steamer had no proper lookout. (*The Ottawa*, 3 Wallace, 268, 272; *The Hypodame*, 6 Wallace, 219.) It was proper for the Westchester to drift. (*The Kentucky*, 4 Blatch., 325; *The Scioto*, Davies R., 359; S. C., 5 Legal Ob., 442; *Fritz* v. *Bull*, 12 How., U. S., 466; *Butterfield* v. *Boyd*, 4 Blatch., 356; *Sturgis* v. *Boyer*, 24 How., U. S., 110, 118, 120; *Pearce* v. *Page*, 24 How., U. S., 228, 231, 233; *The Island City*, 5 Blatch., 264; *Strout* v. *Foster*, 1 How., U. S., 89; *Steamship Fannie* v. *Schooner Ellen Forrester*, U. S. S. C., Daily Transcript, May 13th, 1871; *Crockett* v. *Newton*, 18 How., U. S., 581, 583; *Laune* v. *Tourne*, 9 La., 428; *Newton* v. *Stebbins*, 10 How., U. S., 586; *The Carolus*, 2 Curtis, 69; *The Globe*, 6 notes of cases, 275; 1 Parsons on Shipping and Admiralty, 571, 572.) If case is doubtful, referee's conclusions should not be reversed. (*Westerlo* v. *Dewitt*, 36 N. Y., 344, 345; *Everett* v. *H. R. R. Co.*, 24 How., 104.) Art. 20 of act of congress of 1864 violated, as there was no lookout. (*Beck* v. *S. R. T. Co.*, 6 Robt., 82, 92; *The Ottawa*, 3 Wal., 268; *The Hypodame*, 6 Wal., 216.) The referee was correct in allowing interest. (*The Mary Jane Vaughan* v. *The Telegraph*, 2 Benedict R., 47; *Watkinson* v. *Langdon*,

8 John. R., 213 ; *Klock* v. *Robinson*, 22 Wendell, 157 ; Sedgwick on Damages, 385 ; *The Baltimore*, 8 Wal., 385.)

*T. B. Eldridge and S. Hand*, for respondents. The order of General Term will be affirmed, if there is evidence upon which its views can be based. (Code, § 268 ; *Hoyt* v. *Thompson*, 19 N. Y., 207 ; *Beebe* v. *Mead*, 33 N Y., 587 ; *Coleman* v. *Second Avenue R. R. Co.*, 38 N. Y., 201.) If plaintiff's negligence contributed in any degree to injury, he cannot recover. (*Button* v. *H. R. R. Co.*, 18 N. Y. 248 ; *Kelsey* v. *Barney*, 12 N. Y., 425 ; *Grace* v. *Girdler*, 7 Wall., 196 ; *Dowell* v. *Steam Nav. Co.*, Ell. & Bl. ; *Nelson* v. *Leland*, 22 How., 55 ; *Rathbun* v. *Payne*, 19 Wend., 398 ; *Strout* v. *Foster*, 1 How., U. S., 89 ; *The Indiana*, 1 Abb. Adm., 330 ; *The Potomac*, 8 Wall., 590 ; *The Champion*, 1 Abb. Ad., 202, 206, 207 ; *Neal* v. *Gilbert*, 23 Conn., 437.) He must prove affirmatively due care. (*Drew* v. *Chesapeake*, 2 Doug., 33 ; *Haldeman* v. *Beckwith*, 4 McLean, 286 ; *Ward* v. *Armstrong*, 14 Ill., 283) No lookout independent of pilot required. (*The Farragut*, 10 Wall., 334.) The presumption is, defendants were free from negligence. (1 Cowen & Hill's notes, 3d ed., 441 ; *Star* v. *Peck*, 1 Hill, 270, 273 ; *Butterfield* v. *Boyd*, 4 Blatchford, 356, 358.) Evidence so decided in favor of defendants, that decision of referee is not final. (*Adsit* v. *Wilson*, 7 How., 64, 66 ; *Jackson* v. *Steinburgh*, 1 Caine's, 163 ; *Conrad* v. *Williams*, 6 Hill, 444, 457 ; *Boyd* v. *Colt*, 21 How., 191 ; *Strong* v. *Place*, 33 How., 114.)

Rapallo, J. The principal fact in controversy upon the trial was, whether at the time of the collision, the sloop was drifting down the river with the tide, as described by the plaintiff's witnesses, without wind sufficient to give her steerage way, or whether, as the defendants' witnesses testify, she was sailing with a good breeze, on a course which would have carried her to the eastward of the steamer, and when within a few yards' distance, voluntarily changed her course so as to throw herself athwart the bow of the steamer. It being stated

in the order appealed from, that the new trial was granted on questions of fact as well as of law, we have been compelled to examine the evidence with the view of determining, whether a new trial should have been granted on the ground that the findings of the referee were against the weight of the evidence.

If the collision occurred in the manner claimed by the defendant, the case is too clear for discussion. But if the plaintiff's version be the true one; if the sloop was becalmed and drifting with the tide, and the appearance of a change of course was produced, as stated by the plaintiff's witnesses, not by the action of the helm, but by a momentary puff of air, which threw her boom over to the eastward, and canted her bow to the westward, while she had no steerage-way, a more serious case is presented.

The referee has found this controverted fact in favor of the plaintiff. The court below, in giving the reasons for its decision, has not differed with his finding in respect to the circumstances of the collision; and after a careful examination of the testimony, we have come to the conclusion, that a finding in accordance with the plaintiff's version is not against the weight of the evidence.

Assuming then, as we must, that there was no wind, and the sloop was drifting with the current, we entertain no doubt as to the sufficiency of the evidence, to sustain the finding of negligence on the part of the defendants. From the circumstances of the collision, as testified to by the witnesses on the part of the plaintiff, the referee may have discredited the statement of Delamater, who was at the wheel of the steamer, and may have found, that he did not see the sloop in time to take measures to avoid her, or he may have found that, seeing her, Delamater omitted to change the course of the steamer, as he should have done. If there was any danger of the vessels coming together, it was the duty of the steamer to take action to avoid it; yet, although the sloop was seen by the men on the barges in tow at the distance of more than a mile, and one of the defendant's witnesses, who was on one

of the barges, testified that the sloop appeared to him to be coming close to the barges, and that he took measures to provide against her colliding with the barges, it is not shown that the steamer did anything whatever, for the purpose of keeping out of the way, until the vessels were within twenty-five or thirty yards of each other, when she rang to stop her engine. The man at the wheel testified, that the steamer was then on the same course which she had been keeping for half an hour previously. It is evident that if there was no wind, the sloop could not have moved materially out of the course in which she was drifting, and that a change should, therefore, have been made in the course of the steamer, so as to clear her.

The defence must, therefore, rest upon the allegation of contributory negligence on the part of the sloop.

As we have already stated, we do not deem the evidence on the part of the defence, in respect to the wind and the movements of the sloop, so preponderating as to justify us in holding that the referee should have found that the sloop had a wind, and wrongfully or negligently changed her course, and that his finding to the contrary was against the weight of the evidence. But it is claimed on the part of the defendants, that conceding that the sloop was drifting with the tide, and not under the control of her helm, it was negligent to suffer her to proceed in that unmanageable condition, and it was her duty to come to an anchor.

This position is sustained, by the opinion of the majority of the court below, and is stated as the ground upon which the new trial was granted.

We cannot concur in this view. It is not sustained by authority; and the adoption of such a rule would materially, and it seems to us, unnecessarily embarrass sailing vessels, especially in the navigation of rivers. A sailing vessel should, unless special circumstances exist rendering it dangerous, be entitled to take advantage of a favorable tide as well as wind; and in a temporary calm, or when the wind is baffling, to keep in condition, to take advantage of any breeze which may spring up. She should not be compelled, when a regular

current is carrying her toward her destination, to come to an anchor or lower her sails every time the wind slackens or fails.

If the current should be drifting her toward a stationary object, or one unable to keep out of her way, no doubt it would be her duty to anchor or take other measures to avoid collision. But in the navigation of a river, a sailing vessel owes no such duty to an approaching steamer to which she is visible, and which has motive power and sufficient room to enable her to keep clear. The steamer should judge of the course of the current of the river she is engaged in navigating, and by that means calculate the course of the drifting vessel and avoid it. (*Pearce* v. *Page*, 24 How. U. S., 228; *Newton* v. *Stebbins*, 10 How. U. S., 586; *Crockett* v. *Newton*, 18 How. U. S., 581; *Laune* v. *Tourne*, 9 La., O. S., 428; *The Island City*, 5 Blatchford, 264; *Fretz* v. *Bull*, 12 How. U. S., 466; *The Fashion* v. *Ward*, 6 McLean, 152.) A steam propeller with a tow, stands upon the same footing in respect to the duty of avoiding sailing vessels, as any other steamer. (*N. Y. and Balt. Trans. Co.* v. *Phil. and Sav. St. Navigation Co.*, 22 Howard U. S., 461.)

No special circumstances were shown in this case, which rendered it improper for the Westchester to take advantage of the favorable current to make progress on her voyage, or to keep her sails up to catch the occasional breeze. The river was upward of two miles in width; the channel upwards of one mile in width, and almost entirely clear of vessels. And although it was night there was clear starlight, and the sloop had her lights set, in a manner to indicate that she was under way. It does not appear that there was any deficiency in her equipment. Her master and crew were on deck; she had a proper lookout, and the speed of the current did not exceed two miles per hour. At the rate at which both vessels were progressing, those navigating the steamer could with proper attention, have seen the sloop approaching for a considerable time before meeting her, and made their calculations as to her course, based upon the condition of wind and tide. There

was ample room, and the sloop had a right to expect that the steamer would pass her at a safe distance.

Assuming therefore, as we must, that the referee, in effect, determined that the collision occurred in the manner claimed by the plaintiff, and such finding not being against the weight of evidence, our conclusion is, that contributory negligence on the part of the plaintiff was not shown, and that the finding of the referee on that branch of the case should be sustained.

We have examined the various exceptions to rulings on questions of evidence, and do not find in them any sufficient ground for reversing the judgment.

The only remaining questions raised, relate to the damages. By the stipulation of the parties, but two items were left to be passed upon by the referee, viz., the value of the sloop, and interest. There was sufficient evidence to sustain his finding, as to the value of the vessel, and we think that interest on the value of the property lost was properly allowed. In cases of trover, replevin and trespass, interest on the value of property unlawfully taken, or converted, is allowed by way of damages, for the purpose of complete indemnity of the party injured, and it is difficult to see why, on the same principle, interest on the value of property lost or destroyed, by the wrongful or negligent act of another, may not be included in the damages. (*Propeller Mary Vaughan* v. *Steamboat Telegraph*, 2 Benedict, 47; Sedgwick on Damages, p. 385, and cases cited; *Walrath* v. *Redfield*, 18 N. Y., 457.)

The order appealed from should be reversed, and the judgment on the report of the referee affirmed with costs.

Ch. J., GROVER and PECKHAM, JJ., concur; ALLEN and FOLGER, JJ., not voting.

Judgment affirmed.