WALTER V. WILSON, RESPONDENT, v. THE CITY OF TROY, APPELLANT.

*Negligence of the water commissioners of a city — interest recoverable on a claim sounding in tort — Laws of 1872, chap. 129.*

The water-works of the city of Troy are city property, and the rules of the commissioners forbid any person but the superintendent or his employees to tap a main. A property owner wished water introduced into a house, and certain plumbers employed by her applied to the superintendent of the water-works to have the connection made, which was done and the amount paid by the commissioners for the services rendered by their men in the work was repaid to the commissioners by the plumbers.

*Held,* that the city was liable to the owner of a horse which fell into a hole dug by the laborers of the commissioners in order to tap the main, the opening having been left insufficiently guarded.

In an action for negligence in causing, as alleged, permanent injury to a horse, the jury may give interest upon the sum found by them to represent the depreciation in its value, from the date of such injury.

The charter of the city of Troy (Laws of 1872, chap. 129) provided that no action could be maintained upon a claim against the city unless it was presented to the city comptroller, and the latter did not audit it within sixty days.

*Held,* that no interest could be recovered upon such a claim until sixty days after the date at which it had been duly presented as required by the act.

APPEAL by the defendant, the City of Troy, from a judgment in favor of the plaintiff, entered in the clerk's office of Rensselaer county on the 1st day of October, 1889; and also from an order denying the defendant's motion for a new trial, after a trial at the Rensselaer County Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for $4,761.

*William J. Roche,* for the appellant.

*Levi Smith* and *Orin Gambell,* for the respondent.

LEARNED, P. J.:

This is an appeal from a judgment on a verdict in favor of plaintiff, and from an order denying a new trial. The action is to recover damages for injury to two horses occasioned, on the evening of November 13, 1879, by their falling into a ditch in South street in Troy, alleged to have been dug by the city authorities. On the

trial, however, the litigation and the recovery were confined to one horse, the stallion. Mrs. Sleight was having a building repaired on the north side of south street. She employed Dodds & Ferguson, plumbers, to connect her building by means of a lateral pipe with the water main in the street. The water-works of Troy belong to the city. They are managed by a board of water commissioners. (Laws 1832, chap. 51, § 6; Laws of 1855, chap. 58.) The commissioners can make ordinances and regulations for the use and control of the water. (Sec. 6, law last cited.) By one of these ordinances it is declared: "It shall not be lawful for any person or persons, except the said superintendent and those employed by him or by the water commissioners, to tap or make any connection with the main or distributing pipes of said water-works, or to permit the same to be done except as aforesaid."

Dodds, one of the firm above named, went to the superintendent or his clerk, and told him that he wanted men to open the street and fill it up again at that place, for the purpose of putting the water into the house. Men were accordingly sent there by the water commissioners or the superintendent, who were afterwards paid by the water commissioners for the work. Dodds & Ferguson paid the water commissioners. These laborers were accustomed to be sent all over the city by the water commissioners to dig trenches, and were paid by them. And Dodds & Ferguson knew, by their own experience, that the water-works commissioners always had such work done by their own men. Gray, who was working for Dodds & Ferguson, pointed out to the men the place where the lateral pipe was to go, and after the ditch had been dug by them put in the lateral pipe.

The three men sent by the water commissioners began work in the morning and dug a trench across the sidewalk and to the center of the street, about twenty-five feet. The trench was from two and a half to three feet wide and six feet deep; the earth thrown on each side. The trench was also dug about four feet along the main, and two feet wide to give room to tap the main. The lateral pipe was laid in, and the trench was filled up from near the main to the fence. The part over the main and some four feet north of the main remained open; being, as one witness says, about four feet square and five or six deep. The laborers quit work at six, and put

an old wooden saw-horse, three feet long and two feet high, alongside the ditch. No other barrier was placed, and no lamp put there.

On the same evening one Wilson, not the plaintiff, was driving a team of horses up South street, and, as he testifies, the first thing he knew his horses had gone out of sight. They had fallen into the hole above described; the stallion first and the other upon him. The night was very dark, and neither moon or stars shining. With much difficulty the horses were extricated by the use of ropes and by digging a trench towards the south. For the injury thus done to the stallion the recovery was had.

It seems to us plain that the ditch was dug by laborers in the employ of the city; and that the city must be liable for any negligence causing damage. The water commissioners properly would not allow the main to be tapped except by their own workmen. They might have insisted that the person for whom the pipe was to be inserted should dig the ditch, and might have reserved to themselves only the making of the connection. But probably they found it to be convenient to do both. And at any rate they did adopt that course, and in this case did, as a matter of fact, dig this ditch. And it was none the less their work because Dodds & Ferguson afterwards paid them. Dodds & Ferguson did not control the workmen, but only pointed out the place where the lateral pipe was to be laid.

The case of *Pettengill* v. *Yonkers* (27 N. Y. St. Rep., 531) seems to apply directly to this case, holding that the city was liable for negligent acts of the water commissioners, and also recognizing the duty of the city to guard and protect improvements, public or private, in a street so as to prevent travelers from receiving injury. To the same effect is *Turner* v. *City of Newburgh* (109 N. Y., 301), *Russell* v. *Village of Canastota* (98 id., 496). It hardly seems to need argument to show that a city which digs a pitfall in a street and does not guard it is liable for damages to a traveler who is injured thereby. (*Ehrgott* v. *The Mayor*, 96 N. Y., 264.) And certainly this ditch was not guarded, and was in the highest degree dangerous.

The defendant urges that, as the present value of the stallion was testified to be $250, the verdict could have been only $2,750. But the same witness who testified that the present value was $250, also

testified that before the accident the value was $5,000. Therefore, the verdict was not contrary to the ordinary rule of damages. The defendant next insists that the damages were excessive. The stallion was kept for breeding purposes, and was shown to be a fast horse. Since the accident the proof shows that he is stiffened across the shoulders and back; that when speeded he becomes lame. Witnesses who had experience in the breeding of horses testified that they would not like to breed from a horse thus injured. There was no testimony as to the amount of the damage given by defendant. So that we may justly assume the correctness of that given by the plaintiff. And from the account given of the accident it is plain that the injury might have been very great. We cannot say under the evidence that the damages were excessive.

The complaint demanded judgment in respect to this horse for $3,000 and interest from the date of the injury. The jury gave a verdict for $4,761, which was $3,000 and interest as above stated. It is urged by defendant that interest could not be allowed. The court had charged that the jury might allow interest and the defendant excepted. On this question of the allowance of interest we think that many of the decisions in actions of contract do not give much light. But, even in an action of contract, where certain property was to be delivered at a certain time, it was held that, as a matter of law, the plaintiff was entitled to interest. (*Dana* v. *Fiedler*, 12 N. Y., 40.) So in an action of trover for conversion, interest from the time of the conversion should be given. (*Andrews* v. *Durant*, 18 N. Y., 496 ) This same rule is reaffirmed in *McCormick* v. *Pennsylvania Central Railroad Company* (49 N. Y., 303, 315). The reason given is that interest is as necessary a part of a complete indemnity as the value itself, and is not in the discretion of the jury. This was the doctrine also in *Hyde* v. *Stone* (7 Wend., 354) and *Bissell* v. *Hopkins* (4 Cow., 53). Now, evidently, the reason for this rule is that the injured person has been, from a certain time, deprived of property which was actually in his possession and enjoyment. To pay him back simply the value several years afterwards would not be an indemnity. For, if the property had not been taken from him he would, during all the intervening time, have had the use and enjoyment of it. And this he has been deprived of by the wrongful act of the defendant.

In *White* v. *Miller* (78 N. Y., 393), there is a compilation of most of the recent cases, which, the court says, shows the uncertain state of the law. The cases cited are all actions on contract, as was that case itself. That case was a breach of warranty on the sale of cabbage seeds for some small price. It is quite possible that if the recovery had only been for the price paid interest on that price would have been allowed. But the damages allowed were the difference in value between a crop of cabbage raised from the seed sold and a crop which would ordinarily have been raised from seed such as these were warranted to be. And the court held that interest on such damage could not be allowed. It will be seen, then, that the damages were in themselves speculative, and that no property in the plaintiff's possession was taken away or injured. The court recognizes in that case the rule as to trover and trespass *de bonis asportatis*, as above stated; that is, that interest is a matter of legal right in those cases. Now, what possible difference in principle can there be between a case where a defendant forcibly carries away my horse and a case where he injures my horse so much that it is valueless? If by defendant's violence he breaks my horse's legs so that he is good for nothing, I have lost my property just as much as if defendant had stolen it. And to compensate me I ought to have interest on the damages done, up to the time of recovery. The wrong-doer ought not, by delaying to compensate me, have the use of the money which should have compensated me at the time of the injury. In cases like the present the defendant is to blame and the plaintiff is innocent. And the culpable defendant should make full compensation. He does not do so unless he pays interest.

The action in the present case is on the common law-liability for negligence. In *Sargent* v. *Inhabitants of Hampden* (38 Me., 581), the action was on a statute, and the decision rested on the language of the statute, which limited the recovery to " the amount of the damages sustained thereby."

The defendant urges that the plaintiff has been the possessor of the stallion ever since and has used it. But the jury have found that by this injury the value of the stallion was at once reduced by $3,000. That sum is not speculative, but actual damages accruing at the time of the injury. Let us suppose that by the accident the

plaintiff's wagon had been broken to pieces, but that one wheel remained uninjured. Would it be any answer to the claim for interest to say that the plaintiff has had the wheel ever since and has made some use of it? We think not.

The question of interest arose in a similar case to the present. (*Parrott* v. *Knick. Ice Co.* (46 N. Y., 361). That was an action for damages to a sloop, caused by a collision with a propeller. It was tried before a referee and he allowed interest. The court said that in trover, replevin and trespass interest is allowed for the purpose of complete indemnity; and it was difficult to see why, on the same principle, interest on the value of property lost or destroyed by the wrongful or negligent act of another may not be included in the damages. This is the doctrine of Sedgwick on Damages, 385.

In *Reiss* v. *New York Steam Company* (35 N. Y. St. Rep., 86), the Superior Court in an action for damages to personal property held, that the jury might give interest, but that the plaintiff was not entitled to interest as a matter of law. The case of *Mairs* v. *Manhattan R. E. Association* (89 N. Y., 507), relied upon in that case, was an action for damages to land by flooding the same. So was *Walrath* v. *Redfield* (18 N. Y., 457).

It is, perhaps, not necessary to hold in this case that the plaintiff is entitled to interest as a matter of right, although we believe that to be the true rule in such cases.

The court charged the jury: "You cannot go beyond $3,000 and the interest on that from the time," etc.

The defendant's counsel requested the court to charge that no interest is allowable, citing *White* v. *Miller*. The court declined. The jury rendered a verdict for $3,000 and interest. Then the court said that the jury must compute the interest. They did so and allowed in all $4,761. Therefore, the court left to the jury the question whether they would or would not allow interest, while the position of the defendant was that the jury had no right to allow interest. But we do not see, as a matter of principle, why the allowance of interest in such a case is not a matter of right for the purpose of complete indemnity as much as it is in trover.

There is another question of some novelty in respect to interest. The charter of Troy (Laws of 1872, chap. 129, tit. 6, § 10) says that no action shall be maintained in a case like the present, unless it shall

appear that the claim was presented to the comptroller, and that the comptroller did not audit it within sixty days. This accident happened November 19, 1879. The claim was presented April 5, 1881. The action was commenced October 5, 1885. Now, it is said that interest cannot be allowed for the time prior to the filing of the claim and the refusal to audit. We are of opinion that this is so. The statute makes the presentation and the refusal to audit prerequisites to the right of action. And it would seem reasonable that, in an action for damages for a tort, interest should not begin to run until the right of action has arisen. The language of this charter is not like that of chapter 572, Laws of 1886. And this provision of the charter seems to be intended to provide that the city shall not be liable until the claim has been presented and its comptroller has had time to examine and to determine whether or not to pay.

In this view no interest was recoverable from November 19, 1879, to June 3, 1881. This view requires a deduction of $292 for the interest. With this deduction, the judgment is affirmed, without costs to either party.

LANDON, J., concurred; MAYHAM, J., not acting.

Judgment for deducting $292 and for affirming judgment so deducted, without costs.